## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLATA DIVISION

| | |
|---|---|
| SINUHE CABRERA TORRES and PEDRO DOMINGUEZ BALDERAS, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | |
| | Civil Action No. _____ |
| v. | |
| LX HAUSYS AMERICA, INC.; CL GLOBAL, LLC; and TOTAL EMPLOYEE SOLUTION SUPPORT, LLC. | Complaint - Class Action |
| | JURY DEMAND |
| Defendants. | |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiffs Sinuhe Cabrera Torres ("Plaintiff Cabrera"), and Plaintiff Pedro Dominguez Balderas ("Plaintiff Dominguez") (collectively referred to as "Plaintiffs"), file this Class Action Complaint for damages and equitable relief against LX Hausys America, Inc. ("LX Hausys"), CL Global, LLC ("CL Global"), and Total Employee Solution Support, LLC ("TESS") (collectively referred to as "Defendants"), individually and on behalf of other similarly situated employees of Defendants.

## NATURE OF THE CASE

1.      This case involves fraud, discrimination, breach of contract, and wage violations against foreign workers of Mexican ancestry and national origin who were exploited as part of an illegal scheme for cheap labor in LX Hausys's production plant.

2.      Defendant LX Hausys associated with the recruitment and staffing agencies CL Global and TESS for the common purpose of recruiting Plaintiffs and other foreign professionals from Mexico under the "Trade NAFTA" or "TN" visa program and housing them in Georgia so that they could provide labor for Defendant LX Hausys in the U.S.

3.      All Defendants knew that TN visas would not and could not be granted for the manual labor positions they wanted to fill at a manufacturing plant. Rather, TN visas are strictly regulated and available only to professional-level foreign

workers with specialized education and experience who will come to the U.S. to work professional-level scientific and technical jobs.

4.     Defendants therefore hatched a scheme to recruit highly skilled Mexican engineers and technicians for non-existent professional-level positions that would qualify for the TN visa program.

5.     The plan was a bait and switch accomplished by fraud against the foreign workers and the U.S. government: hire the professional-level Mexican engineers and technicians for non-existent engineer and technician jobs; assist the engineers and technicians with securing the TN visas by submitting fraudulent documents to the U.S. government; and when the foreign workers arrive in the United States, require the workers to perform manual labor with lower and discriminatory pay and excessive mandatory work hours.

6.     Plaintiffs and other Mexican engineers and technicians were victims of this fraudulent scheme. They relied upon Defendants' misrepresentations, paid money for fraudulently-obtained visas, spent money to travel to the U.S. Consulate for interviews, and moved from Mexico to the U.S. for jobs they reasonably believed qualified for the TN visa program and would utilize their specialized education, experience, and skill.

7.     Defendants abused the TN visa process by luring Plaintiffs and other similarly situated workers to the United States with promises of professional-level

employment.

8.     Defendants' conduct violated the Georgia Racketeer Influenced and Corrupt Organizations Act, O.C.G.A. § 16-14-1 et seq. ("Georgia RICO").

9.     But Plaintiffs and other similarly situated Mexican engineers were not only defrauded with false promises of jobs that did not exist; once they started working at LX Hausys, they were also subjected to race and national origin discrimination in violation of 42 U.S.C. § 1981 ("Section 1981"), and deprived of minimum and overtime wages required by the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. ("FLSA").

10.     Plaintiff Dominguez filed Charges of Discrimination against both Defendants with the Equal Employment Opportunity Commission ("EEOC"). The EEOC Charges are currently pending. When a right to sue is issued by the EEOC, Plaintiff Dominguez will amend this lawsuit to include his Title VII claims on behalf of himself and the class.

11.     Plaintiffs, on behalf of the Recruitment Class (as defined below), seek:

  a.  Compensatory, punitive, and trebled damages and attorney's fees and costs, against all Defendants for violations of the Georgia RICO, and

  b.  Consequential, incidental, and/or nominal damages for contract breaches by Defendant LX Hausys and CL Global.

4

12.    Plaintiffs, on behalf of the Discrimination Class (as defined *infra* ¶ 251), seek lost wages and benefits, front pay, compensatory and punitive damages, plus pre-judgment and post-judgment interest, and attorney's fees and costs, against Defendants for Section 1981 violations.

13.    Plaintiffs and similarly situated TN visa holders also seek lost wages, liquidated damages, and attorney's fees and costs against Defendants for violations of the FLSA.

## THE PARTIES

14.    Plaintiffs and putative class members are citizens of Mexico, non-citizens of the United States, and Hispanic persons of Mexican ancestry and national origin.

15.    Plaintiffs were recruited by TESS to come to the United States on TN visas to work for Defendants LX Hausys and CL Global.

16.    Plaintiffs are residents of Mexico and worked for Defendants LX Hausys and CL Global.

17.    At all relevant times, each Plaintiff was a "person" with standing to sue within the meaning of the Georgia RICO, O.C.G.A. § 16-14-6(b).

18.    At all relevant times, each Plaintiff was a party to an employment contract with Defendants LX Hausys and CL Global, either individually or under a theory of joint employment, within the meaning of 42 U.S.C. § 1981 and the

common law.

19.    At all relevant times, each Plaintiff was an "employee" of Defendants LX Hausys and CL Global within the meaning of the FLSA.

20.    Defendant LX Hausys is a foreign profit corporation with its principal place of business at 2480 Preston Ridge Road, Unit 350, Alpharetta, Georgia 30005.

21.    Defendant LX Hausys can be served with a copy of this lawsuit to its registered agent Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

22.    Yong Hoon Cho owns TESS and CL Global. He owns and resides at 2430 Green Mountain Drive, Braselton, Georgia 30517.

23.    Defendant CL Global is a domestic limited liability company with its principal place of business at 2430 Green Mountain Drive, Braselton, Georgia 30517.

24.    TESS is a domestic limited liability company, with its principal place of business at 2430 Green Mountain Drive, Braselton, Georgia 30517.

25.    TESS is a labor recruitment company that recruits foreign national workers to work for companies in the United States, including Defendant LX Hausys.

26.    At all relevant times, each Defendant was a "person" within the meaning of Georgia RICO, O.C.G.A. § 16-14-4.

6

27.    At all relevant times, Defendants LX Hausys and CL Global each were an "employer" of Plaintiffs, either individually or under a theory of joint employment, within the meaning of the FLSA, 29 U.S.C. § 203(d).

28.    Defendants LX Hausys and CL Global are each engaged in commerce or in the production of goods for interstate commerce.

29.    Defendants LX Hausys and CL Global each have a gross volume of sales made or business done of not less than $500,000 per year.

## JOINT EMPLOYMENT ALLEGATIONS

30.    At all relevant times, LX Hausys and CL Global jointly employed Plaintiffs and other similarly situated Mexican engineers as non-exempt employees under the FLSA to work at the LX Hausys facility in Calhoun, Georgia.

31.    The Offer Letters and Support Letters setting forth the terms and conditions of Plaintiffs' and other similarly situated workers' employment—though false—were on joint CL Global and LX Hausys letterhead and were signed by Raquel Montes, Human Resources Manager for CL Global.

32.    Plaintiffs and other similarly situated Mexican engineers received training, supervision, and/or direction regarding how to perform their job and information and directives concerning the terms and conditions of their employment from both Defendants.

33.    LX Hausys supervisors told the Plaintiffs which station to work at,

instructed them on how to perform their job, and monitored and corrected their work.

34.     LX Hausys and CL Global had the power to hire and fire Plaintiffs.

35.     LX Hausys and CL Global both controlled the Plaintiffs' working conditions related to health and safety.

36.     LX Hausys and CL Global both controlled Plaintiffs' compensation. Though CL Global managed payroll, LX Hausys determined and posted Plaintiffs' work schedules, controlled the volume of work Plaintiffs performed, and therefore exercised substantial control over Plaintiffs' work hours.

37.     CL Global retained control over the terms and conditions of Plaintiffs' housing and coordinated and issued the payment of Plaintiffs' wages.

38.     Both Defendants retained substantial control over the terms and conditions of Plaintiffs' employment such that LX Hausys and CL Global were "joint employers."

## JURISDICTION AND VENUE

39.     This Court has subject matter jurisdiction over the federal claims in this case pursuant to 28 U.S.C. § 1331.

40.     Pursuant to 28 U.S.C. § 1367, the Court has pendent jurisdiction over Plaintiffs' state law claims because they are part of the same case or controversy as their federal claims.

41.     The Court has personal jurisdiction over Defendants because they

reside in and conduct systematic and continuous activity in this District, including activity giving rise to Plaintiffs' and other similarly situated workers' causes of action.

42.    The Court has personal jurisdiction over Defendants because they conduct systematic and continuous activity in this District, including:

      a.  Jointly employing Plaintiffs and other similarly situated employees;

      b.  Jointly participating in a venture in this District to recruit, transport, provide, and obtain Plaintiffs' and other similarly situated Mexican engineers' forced labor; and

      c.  Associating together as a RICO Enterprise and committing a pattern of racketeering activity through that enterprise, as alleged below.

## **STATEMENT OF FACTS**

### *The TN visa Program*

43.    The North American Free Trade Agreement ("NAFTA"), which came into force on January 1, 1994, created a special trade relationship between the United States, Mexico, and Canada. *See generally,* North American Free Trade Agreement, Can.-Mex.-U.S., Dec. 17, 1992, 32 I.L.M 289 (1993).

44.    The U.S. government created the TN nonimmigrant classification,

commonly known as the TN visa, to permit Mexican and Canadian professionals in certain occupations ("TN professions") to temporarily enter the U.S. for employment within their profession. *See* 8 C.F.R. § 214.6(a).

45.    Engineer and Scientific Technician/Technologist are among the categories of professionals permitted entry into the United States with TN visas. *See* 8 C.F.R. § 216.4(c) (incorporating Appendix 1603.D.1 to Annex 1603 of the NAFTA).

46.    A Mexican citizen applying for a TN visa

must present documentation sufficient to satisfy the consular officer … that the applicant is seeking entry to the United States to engage in business activities for a United States employer(s) or entity(ies) at a professional level, and that the applicant meets the criteria to perform at such a professional level. This documentation may be in the form of a letter from the prospective employer(s) in the United States or from the foreign employer, and must be supported by diplomas, degrees or membership in a professional organization…The documentation shall fully affirm:

(A) The [TN] profession of the applicant;

(B) A description of the professional activities, including a brief summary of daily job duties, if appropriate, in which the applicant will engage in for the United States employer/entity;

(C) The anticipated length of stay;

(D) The educational qualifications or appropriate credentials which demonstrate that the … Mexican citizen has professional level status; and

(E) The arrangements for remuneration for services to be rendered.

10

8 C.F.R. § 214.6(d)(3)(ii).

47.     The TN visa applicant "must engage in a prearranged business activity at a professional level for a U.S. or foreign employer." 9 F.A.M. § 402.17-5(A).

48.     Once an applicant has provided the required evidence set forth in the preceding paragraph, the applicant is admitted under the TN visa classification for a period of up to three years. *See* 8 C.F.R. § 214.6(e).

49.     The TN visa is tied to the associated employer for the duration of the TN visa period unless a new employer submits a verified petition to USCIS seeking to add or change employers. 8 C.F.R. § 214.6(i)(1) (the new employer must file a Form I-129, Petition for Nonimmigrant Worker).

50.     Since 1997, the number of TN visas issued has increased significantly every year, except for 2020 due to the COVID-19 pandemic. For example, in 1997, 287 TN visas were issued to Mexican nationals.[1] By 2007, the number had increased

---

[1] *See* Nonimmigrant Visa Issuances by Visa Class and Nationality, U.S. Department of State (FY 1998), https://travel.state.gov/content/dam/visas/Statistics/Non-Immigrant-Statistics/NIVDetailTables/FY1998_NIV_Detail_Table.pdf (last viewed March 21, 2024).

to 4,060.[2] In 2017, it had grown to 15,993 visas.[3] In 2021, 24,881 TN visas were issued to Mexican nationals,[4] and in 2022, 33,361 were issued.[5]

51.    Government oversight of TN visa holders' working conditions in the United States is limited. As a consequence, there have been multiple reports of abuses—including misrepresentations in employment contracts—of TN workers,[6] as well as several lawsuits.[7]

---

[2] *See* Nonimmigrant Visa Issuances by Visa Class and Nationality, U.S. Department of State (FY 2007), https://travel.state.gov/content/dam/visas/Statistics/Non-Immigrant-Statistics/NIVDetailTables/FY07NIVDetailTable.pdf (last viewed March 21, 2024).

[3] *See* Nonimmigrant Visa Issuances by Visa Class and Nationality, U.S. Department of State (FY 2017), https://travel.state.gov/content/dam/visas/Statistics/Non-Immigrant-Statistics/NIVDetailTables/FY17NIVDetailTable.pdf (last viewed March 21, 2024).

[4] *See* Nonimmigrant Visas Issuances by Visa Class and Nationality, U.S. Department of State (FY 2021), https://travel.state.gov/content/dam/visas/Statistics/Non-Immigrant-Statistics/NIVDetailTables/FY21NIVDetailTable.pdf (last viewed March 21, 2024).

[5] *See* Nonimmigrant Visas Issuances by Visa Class and Nationality, U.S. Department of State (FY 2022), https://travel.state.gov/content/dam/visas/Statistics/Non-Immigrant-Statistics/NIVDetailTables/FY22NIVDetailTable.pdf (last viewed March 21, 2024).

[6] Coerced under NAFTA: Abuses of Migrant Workers in the TN visa Program and Recommendations for Reform, Centro de los Derechos del Migrante (Dec. 2017), https://cdmigrante.org/wp-content/uploads/2018/01/Coerced-under-NAFTA_-Abuses-of-Migrant-Workers-in-TN-Visa-Program.pdf (last viewed March 25, 2022).

[7] *See, e.g., Martinez-Rodriguez v. Giles*, 31 F.4th 1139 (9th Cir. 2022); *Castellanos v. Wordlwide Distribution Sys. USA, LLC,* No. 2:14-CV-12609, 2016 WL 11678220, at *8 (E.D. Mich. June 20, 2016); *Peregrina v. SL Alabama, LLC, et al.*, No. 3:23-CV-00206-TCB-RGV (N.D. Ga. 2023); *Martinez, et al. v. de la Mobis Alabama, LLC, et al.*, 3:22-CV-00145-TCB-RGV (N.D. Ga. 2023); *De la Fuente v. Columbia*

### *Defendants' Fraudulent Scheme*

52.     The fraudulent acts described herein were committed by Defendants through a RICO Enterprise, as described below.

## **LX Hausys**

53.     LX Hausys America, Inc. is a subsidiary of LX Hausys Ltd., a Korean company.

54.     LX Hausys America, Inc. touts itself as "one of the world's leading providers of building and decorative materials employing more than 4,000 employees spanning the globe." https://www.linkedin.com/company/lxhausysusa/ (last visited March 21, 2024). Their business lines include "surface materials, flooring, and automotive components." *Id.*

55.     LX Hausys employs approximately 3,000 employees in its Calhoun, Georgia location.

56.     LX Hausys uses outside labor recruiters, including CL Global and TESS, to staff the Calhoun facility.

## **CL Global and TESS**

57.     TESS is a labor recruiter based in Braselton, Georgia and with offices in Mexico.

---

*Recycling Corp.*, No. 4:22-cv-00256-WMR, --- F. Supp. 3d ----, 2023 WL 8713545 (N.D. Ga. 2023).

58.     TESS served as the first point of contact for Plaintiffs and other similarly situated employees in Mexico who were hired by LX Hausys to work at its plant.

59.     CL Global is also a labor recruiter based in Braselton, Georgia.

60.     TESS and CL Global regularly advertise new job vacancies for TN visa jobs on the internet, including on Indeed, LinkedIn, and Facebook.

61.     On LinkedIn, CL Global promotes itself as being "dedicated to the recruiting and staffing services of technicians or engineers from Mexico and local staffing throughout our other branches: CL Global, Texan CL Global, CKII, and TYJR. Each branch has a different focus to cover the most of different industries. We have been helping companies to grow by providing the most qualified TN Visa workers for more than 12 years."

https://www.linkedin.com/company/clglobalus/about/ (last viewed March 21, 2024).

62.     On TESS' LinkedIn page, it states that it "has been providing headhunting services for automotive companies in Alabama and Georgia for the last 10 years." https://www.linkedin.com/company/clglobalusa/ (last viewed March 21, 2024).

63.     TESS and CL Global appear to share a LinkedIn page and have same CL Global logo on both pages.

14

64.     TESS advertised job opportunities with Defendant LX Hausys on various job websites in Mexico.

65.     CL Global and TESS are related entities. In this case, they worked to assist Plaintiffs and Mexican nationals with preparing and submitting TN visa applications for high-skilled jobs to the U.S. government to gain authorization for those individuals to come to the U.S. and work for LX Hausys.

66.     TESS and CL Global brought hundreds of Mexican nationals to the United States to work at the LX Hausys plant in Calhoun, Georgia, through their coordinated effort as described *supra* and *infra*.

67.     In a lawsuit currently pending in the Northern District of Georgia, TESS is also accused of recruiting workers in a similar fraudulent TN visa scheme to work for other companies in the U.S., specifically Hyundai Mobis and Kia in LaGrange, Georgia. *Martinez, et al. v. de la Mobis Alabama, LLC, et al.*, 3:22-CV-00145-TCB-RGV (N.D. Ga. 2023) (Doc. 69 – Third Amended Complaint; Doc. 105 – Report & Recommendation recommending denial of TESS' motion to dismiss the RICO, Title VII, and Section 1981 claims).

### *Plaintiff Sinuhe Cabrera Torres*

68.     Mr. Cabrera obtained a bachelor's degree in Industrial Engineering from the Instituto Tecnológico Superior de Apatzingán in Mexico.

69.     He has over 8 years of engineering experience.

70.    In the summer of 2022, Mr. Cabrera saw an engineering job posting on a job search website and applied. The job posting was posted by TESS.

71.    TESS subsequently conducted two telephonic interviews with Mr. Cabrera in August and September 2021. TESS informed Mr. Cabrera that the vacant position was for an industrial engineer, and the representative for the company told Mr. Cabrera that his education met the requirements for the job and that his English was good enough.

72.    On January 13, 2022, CL Global and TESS, on joint letterhead, wrote a letter to Mr. Cabrera to thank him for taking the time to interview with them for open positions. The letter further provided Mr. Cabrera with general information about current job openings with a base salary of $11 per hour and estimated annual salary of $35,000. The letter further states: "You will be hired as a full-time employee performing the job duties and responsibilities regarding the position that you applied."

73.    The letter further contemplated Mr. Cabrera signing the bottom of the letter to indicate: "you agree on being part of a visa counseling which will be given by the following companies: TESS, TYJR or CL Global." (Exhibit 1). The letter was signed by Guadalupe Flores, Manager of the Recruiting Team.

74.    On January 20, 2022, Jahir Manzo, a "Jr. Specialist" with TESS, sent Mr. Cabrera further communication outlining the process to obtain a TN visa and

detailing each step, including that: Mr. Cabrera would pay the $160 application fee, TESS would schedule the consular appointment, and TESS would even carry out "consular interview simulations" "to ensure a successful interview." (Exhibit 2).

75.    TESS also explained it would send Mr. Cabrera an Excel file so that he would input information needed for his visa application and send it back to the company to prepare his application, which he later did. *Id.*

76.    TESS then provided Plaintiff Cabrera with a written job offer dated January 26, 2022. The letter was on joint CL Global and LX Hausys letterhead and was signed by CL Global's Human Resources Manager, Raquel Montes. The address on the letterhead is 2430 Green Mountain Drive, Braselton, Georgia 30517, the same address listed for TESS and CL Global's registered agent and owner. (Exhibit 3).

77.    In the Offer Letter, Defendants offered Mr. Cabrera a job as an Industrial Engineer for up to three years with an annual salary of $35,000 plus overtime, including two months of housing and transportation benefits. *Id.*

78.    The same day, TESS also sent Mr. Cabrera a Support Letter for his TN visa application. The Support Letter was on joint letterhead from CL Global and LX Hausys and signed by Ms. Montes, CL Global's Human Resources Manager. (Exhibit 4).

79.    The letter stated that "CL Global, LLC is a manufacturing and

engineering staffing company serving all the major automation and automotive supplier companies from Kia and Hyundai located in Georgia and Alabama." *Id*. The letter further states that CL Global is located in Braselton, Georgia with subsidiaries in Alabama and Mexico. *Id.*

80.     CL Global explained that it had a "strategic alliance" with LX Hausys which had one location in Georgia and 14 distribution centers. *Id.*

81.      The letter further explained that "LX Hausys is a huge company with sales that went up to $321 Million USD during the last year (2020), and sales expected to reach $400 Million USD and $450 Million USD during 2021 and 2022, respectively." *Id.*

82.     The Support Letter also stated that Mr. Cabrera "will be a full-time employee and will be assigned to company LX Hausys, Ltd. for the duration of his stay in the United States. He will directly report to Mr. Jacob Kim, Human Resources Manager at LX Hausys, Ltd. in the United States. T.E.S.S. LLC has a valid $11 Million USD contract + Expenses (housing, transportation, etc…) with LX Hausys on providing staffing services." *Id.* (emphasis in original).

83.     The Support Letter further stated that Mr. Cabrera's "main duties" would include the following:

- Provide engineering expertise in developing a range of engineering solutions to improve the manufacture of new and existing LX Hausys products;
- Analyze and determine the best equipment setup and process

flow for maximizing fabrication of parts within a high-volume manufacturing environment;

- Apply automated solutions for the transfer of materials, components, and finished goods;
- Improve current production processes to manufacture products, using applicable methods and procedures;
- Develop standardized work instructions so operators can perform work safely, with the proper quality, and at the proper time;
- Apply mathematical analysis to determine the validity and reliability of sampling and work statistics;
- Plan and schedule Manufacturing Orders to be completed promptly by analyzing production capacities and scheduling all orders in the injection machines in a way that minimizes labor while decreasing the lead time to customers;
- Monitor, analyze, and prepare weekly production reports and reports them to the Operations Manager with suggested ideas to improve production efficiencies; and
- Support Production engineers and management staff by assisting in daily challenges that occur and by managing inventory and completing projects as required to help control operating expenses.

*Id.*

84.    The Support Letter also explained that Mr. Cabrera was qualified for the TN visa job because, among other things, he had over 10 years of engineering experience, a bachelor's degree in Industrial Engineering, and excellent academic performance. *Id.*

85.    Although unknown to Mr. Cabrera, the required job qualifications and the position description provided in the job offer and Support Letter to secure the TN visa were false.

86.    At the time Ms. Montes signed the Support Letter, she knew the

representations about the job qualifications and the job description were false.

87.    Unknown to Mr. Cabrera, he was the victim of a scheme to abuse the legal TN visa process for the purpose of providing and obtaining his employment for manual (non-technical) production line work at LX Hausys.

88.    On February 15, 2022, Jahir Manzo from TESS sent Mr. Cabrera another email advising him that his TN visa interview was confirmed for the following week. He also provided the Offer Letter and the Support Letter, which he reminded Mr. Cabrera to bring to the consulate, and the general study guide, consular interview report, and company profile. (Exhibit 5).

89.    TESS also sent him a nine-page "study guide" which outlined the documents he should bring to the consulate, the types of questions he might be asked, and suggested answers. (Exhibit 6).

90.    Mr. Manzo explained that the study guide "contains general instructions about the [TN visa] appointment, as well as sample questions and answers in both Spanish and English that you must review in order to schedule 3 interview practices that will be in English via video call 3 days before your consular appointments, we will contact you to schedule." (Exhibit 5).

91.    A representative from TESS also called Mr. Cabrera and had a practice interview with him on the phone. The representative asked Mr. Cabrera questions he would need to answer about the engineering job he was being offered and gave

feedback on how to answer questions at the TN visa interview.

92.     In late February 2022, Mr. Cabrera travelled to the U.S. Consulate in Mexico City for an interview to obtain a TN visa.

93.     Mr. Cabrera incurred travel and food costs which were not reimbursed.

94.     Mr. Cabrera paid $160 to apply for the TN visa. This cost also was not reimbursed.

95.     He participated in a TN visa interview at the consulate on February 22, 2022.

96.     After the interview, TESS expected Mr. Cabrera to fill out an Excel spreadsheet it sent him asking post-interview inquiries, such as physically describing the consulate, listing the questions the interviewer asked Mr. Cabrera, and the answers he provided, among other questions. (Exhibit 7).

97.     The scheme by Defendants to fraudulently secure a TN visa for Mr. Cabrera was successful and, in reliance on the misrepresentations in the Support Letter, the U.S. government granted a TN visa for Mr. Cabrera to work on a temporary basis in the United States at LX Hausys.

98.     On or around March 8, 2022, Mr. Cabrera attended a virtual meeting with TESS representatives and a Korean man. He and other Mexican workers were provided with training to understand Korean culture before their travel to the TN visa job with Korean companies. Mr. Cabrera and others were told to be respectful

and not to offend anyone.

99.    On or around March 9, 2022, in reliance on the promises made by Defendants concerning the job promised to him in the Support Letter and his eligibility for that job under U.S. law, Mr. Cabrera moved from Mexico to the United States to begin work at LX Hausys.

100.    After arriving at the Atlanta airport in the United States, Mr. Cabrera was picked up by CL Global supervisors and brought to a Super 8 motel in Calhoun, Georgia.

101.    CL Global arranged for Mr. Cabrera to live at the Super 8 motel for two months, which he did. He shared a hotel room with a roommate he had met for the first time when he arrived in the United States.

102.    On March 16, 2022, Mr. Cabrera started working at LX Hausys.

103.    The first day on the job, LX Hausys provided him with the following "Assignment Information Card" which detailed his badge number, recruitment agency (TESS), plant he would be working at, job title, shift worked, and where to report for work. The card indicated he was a mould processor and would be working the third shift (6:45pm to 7:00am).



104.   When Mr. Cabrera began the job, he had already expended significant costs and expenses to travel to the United States, and he had foregone other employment opportunities.

105.   Mr. Cabrera immediately learned that the job he had been promised did not exist (or at least did not exist for him). Rather than perform skilled technical services in automotive manufacturing as promised by Defendants and as required for a TN visa, Mr. Cabrera was required to perform manual labor on a production line making kitchen countertops.

106.   The LX Hausys plant that Mr. Cabrera worked at was located in Calhoun, Georgia. There were approximately 2,000 – 3,000 people working at the plant. There were two 12-hour shifts working in the plant, and each shift had about

1,500 employees working.

107.   Mr. Cabrera saw at least 60 to 70 other TN visa workers working at the LX plant during his employment. All the TN visa workers that worked at the plant worked as operators like him, and none as engineers.

108.   The production line or operator work required no technical skill and involved cleaning plastics moulds for kitchen counters with air pressure to ensure they were clean. This involved repetitive body movement and strenuous, physically demanding work. As a result, his body hurt.

109.   Defendant LX Hausys and CL Global discriminated against Mr. Cabrera during his employment with the companies.

110.   While Mr. Cabrera was required to work overtime, other LX Hausys employees who were U.S. citizens or nationals, non-Mexican nationals, and/or non-Hispanic were only required to work 40 hours per week.

111.   During Mr. Cabrera's employment, he was paid approximately $14 per hour. However, similarly situated comparators were paid at least $18 per hour for the same job. For example, Mr. Cabrera's American work partner Debra was paid $18 per hour, as was LX Hausys employee Lenn.

112.   Mr. Cabrera worked alongside employees of LX Hausys and was supervised and received instruction on how to perform his job from LX Hausys American supervisor, Mark. They communicated in English.

113.   LX Hausys posted a schedule that detailed the days and times Mr. Cabrera needed to work for the company.

114.   However, in order to receive his paycheck and compensation from LX Hausys for the work he performed, Mr. Cabrera had to personally go to CL Global employee Marcos' apartment to pick up the check. CL Global always provided these paychecks to Mr. Cabrera during his employment with Defendants.

115.   The paychecks were issued by CL Global, LLC with an address at 2430 Green Mountain Drive, Braselton, Georgia, 30517.

116.   CL Global and TESS owner Yong Hoon Cho lived at the aforementioned residential address and owns this home.

117.   As outlined above, Mr. Cabrera was not permitted to perform the technical services he was hired to perform or that used the job skills that Defendants told Mr. Cabrera and the U.S. government were necessary for the position.

118.   On or around April 22, 2022, Mr. Cabrera reached his breaking point, quit his job, and began looking for new work with better pay. He determined he would rather bear the costs and risks of leaving than continue working excessive mandatory overtime, in poor working conditions at a manual labor position that was contrary to what he had been promised.

119.   Mr. Cabrera was later present when another worker resigned. In response, Marcos from CL Global told the resigning worker that if he did not leave

America in 60 days, he would report the worker to immigration.

### *Plaintiff Pedro Dominguez Balderas*

120.   Mr. Dominguez obtained a bachelor's degree in industrial engineering from La Universidad Veracruzana in Mexico in 2017.

121.   He has over four years of engineering experience.

122.   On or around November 2021, Mr. Dominguez saw an industrial engineering job posting on Indeed, a job search website, and applied. The job posting was posted by TESS.

123.   On December 10, 2021, Kevin Ramirez from TESS contacted Mr. Dominguez via e-mail in response to his job application. The email stated: "I will tell you a little more about us, we are a recruitment agency and we work with several companies in the United States, mainly related to the automotive industry, most of our clients are Hyundai and KIA suppliers, we work mainly in states such as Georgia, Alabama and Michigan. Our vacancies vary, but they range from vacancies for technicians or engineering level in different areas related to the automotive industry." (Exhibit 8). It further explained that if Mr. Dominguez was interested in open positions, he should provide them with some additional information about his qualifications. *Id.*

124.   Mr. Dominguez subsequently had a phone interview with Mr. Ramirez on December 13, 2021.

125.   On January 24, 2022, Mr. Ramirez emailed Mr. Dominguez a letter on joint letterhead from TESS, CL Global LLC, and TYJR, signed by Guadalupe Flores, Manager of the Recruiting Team. The job offer stated that Mr. Dominguez's base salary would be $12 per hour and his estimated annual salary would be $35,000 per year. (Exhibit 9).

126.   Mr. Ramirez asked Mr. Dominguez to sign the Offer Letter with blue ink and return it to him in order to continue with the visa process, which he did.

127.   On February 23, 2022, Mr. Jahir Manzo from TESS contacted Mr. Dominguez to schedule practice interview sessions or "interview tests." (Exhibit 10). They scheduled the first practice session for March 2, 2022.

128.   The same day, Mr. Manzo emailed Mr. Dominguez to confirm that his TN visa interview was scheduled for March 4 and 7. *Id.*

129.   He also provided copies of the Offer Letter and of the Support Letter, which he reminded Mr. Cabrera needed to be brought to the consulate, a "general study guide," the "consular interview report in Excel" and a company profile. *Id.*

130.   The nine-page "general study guide" outlined the documents he should bring to the consulate, the types of questions he might be asked, and suggested answers. (Exhibit 11).

131.   Mr. Manzo explained that the study guide "contains general instructions about the [TN visa] appointment, as well as sample questions and

answers in both Spanish and English that you must review in order to schedule 3 interview practices that will be in English via video call 3 days before your consular appointments, we will contact you to schedule." (Exhibit 10).

132.   After the interview, TESS expected Mr. Dominguez to fill out an Excel spreadsheet it sent him asking post-interview inquiries, such as physically describing the consulate, listing the questions the interviewer asked Mr. Dominguez, and the answers he provided, among other questions.

133.   A representative from TESS also called Mr. Dominguez and had a practice interview with him on the phone. He was reminded about questions he would need to answer about the engineering job he was being offered and given feedback on how to answer questions at the TN visa interview.

134.   TESS subsequently provided Mr. Dominguez with an Offer Letter dated February 1, 2022. The job offer was on joint letterhead from CL Global and LX Hausys. The letter was signed by CL Global's Human Resources Manager, Raquel Montes. The address on the letterhead was 2430 Green Mountain Drive, Braselton, Georgia 30517, the same address listed for CL Global and TESS' registered agent and owner. (Exhibit 12).

135.   The job offer formally offered Mr. Dominguez a job as an Industrial Engineer for up to three years with an annual salary of $35,000 plus overtime, and two months of housing and transportation benefits. *Id.*

136.   The same day, TESS also provided a Support Letter to Mr. Dominguez so that he could apply for a TN visa. The Support Letter was on joint CL Global and LX Hausys and signed by Raquel Montes, Human Resources Manager for CL Global. (Exhibit 13).

137.   The Support Letter stated that "CL Global, LLC is a manufacturing and engineering staffing company serving all the major automation and automotive supplier companies from Kia and Hyundai located in Georgia and Alabama." *Id.*

138.   The Support Letter further stated that CL Global was located in Braselton, Georgia with subsidiaries in Alabama and Mexico and has been "providing Engineering services since 2010, specializing in providing expertise in 3D mechanical design, electrical pneumatic, hydraulic design, PLC, robot programming, metrology, and logistics services to these major companies." *Id.*

139.   CL Global further explained that it had a "strategic alliance" with LX Hausys. The letter further explained that "LX Hausys is a huge company with sales that went up to $321 Million USD during the last year (2020), and sales expected to reach $400 Million USD and $450 Million USD during 2021 and 2022, respectively." *Id.*

140.   The Support Letter further explained that LX Hausys has one location in Calhoun, Georgia and 14 distribution centers spread across the country and outside the U.S. *Id.*

141.  The Support Letter further stated that Mr. Dominguez "will be a full-time employee and will be assigned to company LX Hausys, Ltd. for the duration of his stay in the United States. He will directly report to Mr. Jacob Kim, Human Resources Manager at LX Hausys, Ltd. in the United States. T.E.S.S. LLC has a valid $11 Million USD contract + Expenses (housing, transportation, etc…) with LX Hausys on providing <u>staffing services</u>. LX Hauays Ltd. is excited to offer this unique opportunity and great possibilities to help shape <u>Mr. Dominguez's</u> future." (Ex. 13, emphasis in original).

142.  The Support Letter next detailed Mr. Dominguez would be using his academic and professional engineering background "to improve production facilities, reduce the incidence of costly breakdowns, and develop strategies to improve overall reliability and safety of plant, personnel, and production processes." *Id.*

143.  The Support Letter indicated that Mr. Dominguez's "main duties" at LX Hausys would include the following:

> a. Provide engineering expertise in developing a range of engineering solutions to improve the manufacture of new and existing LX Hausys products.

> b. Analyze and determine the best equipment setup and process flow for maximizing fabrication of parts within a high-volume

manufacturing environment.

c. Apply automated solutions for the transfer of materials, components, and finished goods.

d. Improve current production processes to manufacture products, using applicable methods and procedures.

e. Develop standardized work instructions so operators can perform work safely, with the proper quality, and at the proper time.

f. Apply mathematical analysis to determine the validity and reliability of sampling and work statistics.

g. Plan and schedule Manufacturing Orders to be completed promptly by analyzing production capacities and scheduling all orders in the injection machines in a way that minimizes labor while decreasing the lead time to customers.

h. Monitor, analyze, and prepare weekly production reports and reports them to the Operations Manager with suggested ideas to improve production efficiencies.

i. Support Production engineers and management staff by assisting in daily challenges that occur and by managing inventory and completing projects as required to help control operating expenses. *Id.*

144.   The Support Letter from Defendants further explained that Mr. Dominguez was qualified for the TN visa job because, among other things, he had over 4 years of engineering experience, a bachelor's degree in Industrial Engineering, and excellent academic performance. *Id.*

145.   Although unknown to Mr. Dominguez, the required job qualifications and the position description provided in the Offer Letter and Support Letter to secure the TN visa were false.

146.   At the time Ms. Montes signed the Support Letter, she knew the representations about the job qualifications and the job description were false.

147.   Before Mr. Dominguez's TN visa interview, TESS conducted a practice interview with Mr. Dominguez so he could practice answering questions about his offered engineering job at LX Hausys.

148.   Unknown to Mr. Dominguez, he was the victim of a scheme to abuse the legal TN visa process for the purpose of providing and obtaining his employment for manual (non-technical) production line work at LX Hausys.

149.   In February 2022, Mr. Dominguez travelled to the U.S. Consulate in Mexico City for an interview to obtain a TN visa.

150.   Mr. Dominguez incurred travel and food costs which were not reimbursed.

151.   Mr. Dominguez paid $160 to apply for the TN visa. This cost also was

not reimbursed.

152.   Mr. Dominguez participated in a TN visa interview at the consulate on March 4, 2022.

153.   After the interview, TESS expected Mr. Dominguez to fill out an Excel spreadsheet it sent him asking post-interview inquiries, such as physically describing the consulate, listing the questions the interviewer asked Mr. Dominguez, and the answers he provided, among other questions.

154.   The scheme by Defendants to fraudulently secure a TN visa for Mr. Dominguez was successful and, in reliance on the misrepresentations in the Support Letter, the U.S. government granted a TN visa for Mr. Dominguez to work on a temporary basis in the United States at LX Hausys.

155.   On March 22, 2022, in anticipation of Mr. Dominguez traveling to the United States to work for LX Hausys, a representative from TESS sent him and other potential TN visa workers an email with a presentation and video links regarding Korean work culture. (Exhibit 14).

156.   On March 23, 2022, in reliance on the promises made by Defendants concerning the job promised to him in the Support Letter and his eligibility for that job under U.S. law, Mr. Dominguez moved from Mexico to the United States to begin work at LX Hausys.

157.   Mr. Dominguez was picked up at the Atlanta airport by CL Global

representatives Marco (L/N/U) and Fernando Garcia (HR Manager for CL Global) and brought to a motel in Calhoun, Georgia.

158.   CL Global arranged for Mr. Dominguez to live at the motel for two months, which he did. He shared a hotel room with a roommate he had met for the first time when he arrived in the United States.

159.   On March 25, 2022, Mr. Dominguez started working at LX Hausys.

160.   The first day at LX Hausys, the company provided him and other TN visa workers with an "Assignment Information Card" indicating that his job title was "Mixing Mat. Handler," that he would be working the second shift, and his supervisor was Zach Brown.



161.   TESS asked Mr. Dominguez and other TN Visa workers who arrived in the United States the same day he arrived to circulate a photo of the Assignment Card, which he did on WhatsApp. (Exhibit 15).

162.   Seven other TN visa workers at LX Hausys sent TESS Assignment

Cards that indicated their job titles would be Mould Processor, Moulding Op., and Mixing Mat. Handler. (Exhibit 15).

163.   When Mr. Dominguez began working at LX Hausys, he had already expended significant costs and expenses to travel to the United States, and he had foregone other employment opportunities.

164.   Mr. Dominguez immediately learned that the job he had been promised did not exist (or at least did not exist for him). Rather than perform skilled technical services as promised by Defendants and as required for a TN visa, Mr. Dominguez was required to work as an operator and performed manual labor on a production line.

165.   Mr. Dominguez operated a crane (which he had no prior experience ever using), as instructed by LX Hausys, and used it to pour different powders into different containers.

166.   Defendants discriminated against Mr. Dominguez during his employment.

167.   While Mr. Dominguez was required to work overtime, other LX Hausys employees who were U.S. citizens or nationals, non-Mexican nationals, and/or non-Hispanic were only required to work 40 hours per week.

168.   Mr. Dominguez was also required to work the second (night) shift with other TN visa workers and did not have any choice regarding which shift he could

work. U.S. workers, however, were not required to work this less desirable shift.

169. During Mr. Dominguez's employment, he was paid approximately $14 per hour. However, similarly situated comparators were paid at least $18 per hour for the same job. For example, Mr. Dominguez's white American co-worker Brian earned $18 per hour.

170. Mr. Dominguez also observed that Korean workers were employed as engineers and were not performing manual labor like himself and other TN visa workers.

171. Mr. Dominguez worked alongside employees of LX Hausys and was supervised and received instruction on how to perform his job from LX Hausys American supervisor, Zach Brown. They communicated in English.

172. LX Hausys posted a schedule that details the days and times Mr. Dominguez needed to work for the company.

173. However, in order to receive his paycheck and compensation from LX Hausys for the work he performed, Mr. Dominguez had to pick it up from CL Global employees Fernando Garcia (HR Manager) and/or Marcos (L/N/U).

174. The paychecks were issued by CL Global, LLC with an address at 2430 Green Mountain Drive, Braselton, Georgia, 30517. This is the same address as, and is the home of, CL Global's owner.

175. As outlined above, Mr. Dominguez was not permitted to perform the

technical services he was hired to perform or that used the job skills that Defendants told Mr. Dominguez and the U.S. government were necessary for the position.

176.   Mr. Dominguez complained at least two times to Marcos and Fernando Garcia (CL Global's HR Manager) in April 2022 because he was told he would be working as an engineer but was actually working as an operator. In response, they told him that nothing could be done to change this and that he had to do what he was told to do.

177.   On April 1, 2022, Mr. Garcia provided Mr. Dominguez with a "Certificate of Employment" from CL Global stating he was working for CL Global as an Industrial Engineer starting on March 24, 2022. (Exhibit 16).

178.   Mr. Garcia provided this document so that Mr. Dominguez could apply for a social security card and open a bank account in Georgia.

179.   CL Global instructed Mr. Dominguez over WhatsApp to identify CL Global LLC as his employer when applying for a social security card. (Exhibit 15).

180.   On or around end of August 2022, Mr. Dominguez reached his breaking point, quit his job, and looked for new work with better pay. He determined he would rather bear the costs and risks of leaving than continue working excessive mandatory overtime, in poor working conditions at a manual labor position that was contrary to what he had been promised.

181.   Mr. Dominguez was able to find an engineering position in Mexico

which provided him more compensation than Defendants were paying him.

182.   After this experience, Mr. Dominguez does not plan on working in the United States again or applying for any TN visa given his terrible working experience.

## **Employment Discrimination Allegations**

183.   Other employees of Defendant LX Hausys who were U.S. citizens or nationals, non-Mexican nationals, and non-Hispanic, perform manual labor in the same or similar positions as Plaintiffs.

184.   All Plaintiffs earned substantially less per hour than LX Hausys employees who (a) were U.S. citizens or nationals, non-Mexican nationals, and non-Hispanic, and (b) were in the same or similar positions.

185.   Employees of LX Hausys who are U.S. citizens or nationals, non-Mexican nationals, and non-Hispanic are or were not required to work more than 40 hours per week for the same or similar manual labor positions as Plaintiffs.

186.   Plaintiffs spoke with American workers at LX Hausys and found out that they earned $18 per hour for the same or similar manual labor positions, despite working for the company for only a few months, and these workers were not required to work overtime. Additionally, American workers were not required to work the less desirable night shift and had more flexibility regarding the shift they worked.

187.   Plaintiffs also have learned that employees working at the LX Hausys

facility who were U.S. citizens or nationals, non-Mexican nationals, and non-Hispanic who perform the same work as Plaintiffs are not required to hold college degrees.

188.   Defendant LX Hausys has a pattern and practice of paying employees who are U.S. citizens or nationals, non-Mexican nationals, and non-Hispanic higher wages than employees who are non-U.S. citizens, Hispanic, and of Mexican national origin.

189.   Defendant LX Hausys also discriminated against Plaintiffs because engineers who were U.S. or Korean citizens or nationals, non-Mexican nationals, and non-Hispanic were not required to work manual labor positions at low wages. Instead, such persons were hired in skilled positions, earning higher wages for fewer hours and better working conditions.

## **RICO VIOLATIONS**

190.   Defendants LX Hausys, CL Global, and TESS ("the RICO Enterprise") were each individually and collectively an "enterprise" within the meaning of Georgia RICO in that they were each individually a person, sole proprietorship, corporation, business trust, or union chartered under the laws of Georgia, and/or were collectively an unchartered union, association, or group of individuals associated in fact although not a legal entity. O.C.G.A. § 16-14-3(3).

191.   At all relevant times, Defendants harbored the common purpose of

securing cheap manual labor to work at the LX Hausys facility and to profit from such labor and the recruitment of such labor.

192. Defendants constitute an ongoing organization with a framework, either formal or informal, for carrying out the above-pled common purpose.

193. The RICO Enterprise began in or about November 2021 and was used to defraud Plaintiffs, the U.S. government, and many other foreign workers recruited from Mexico to work for Defendants.

*Association-in-Fact*

194. Defendants associated with each other for the common purpose of recruiting Mexican engineers and technicians for and employing Mexican engineers and technicians on LX Hausys's production line.

195. LX Hausys agreed with TESS and CL Global that they would recruit and employ foreign workers to work as laborers on LX Hausys's production line.

196. TESS knowingly agreed with LX Hausys to post fraudulent announcements for employment at the LX Hausys plant as engineers or in other positions with education and skill requirements necessary to make foreign workers qualified for TN visas.

197. In furtherance of the scheme, LX Hausys provided detailed information relating to operations at its plant to use during recruitment and to include in the TN visa Support Letters.

198.   For example, the Support Letters stated:

CL Global LLC has formed a strategic alliance with LX Hausys Ltd., LG Hausys, the innovative manufacturer of decorative and building materials, whose name has changed to LX Hausys, Ltd. LX Hausys was established in April 2009 by splitting off the industrial materials division from LG Chem. LX Hausys produces building materials and interior materials. The company's products include PVC, aluminum windows, functional glass, flooring, insulation, wallpaper, and artificial marble. Sales are made up of 58% of construction materials and 41% of high-performance materials and parts for interior use. This company is a globally diversified organization, a spin-off from the LG Group, a South Korean multinational conglomerate known for its advanced consumer electronics, and a myriad of products. designed to link innovation with a better life. LX Hausys is a huge company with sales that went up to $321 Million USD during last year (2020), and sales expected to reach $400 Million USD and $450 Million USD during 2021 and 2022, respectively. LX Hausys has one location in Georgia (1405 US Highway 41, S, Calhoun, GA 30701) and 14 distribution centers.

(Exhibits 4 & 13).

199.   LX Hausys agreed to this fraudulent scheme as evidenced by the strategic alliance, allowing its letterhead and logo to be used on the Offer Letters and Support Letters, hiring the Plaintiffs and other TN visa workers for non-existent jobs, and jointly employing the Plaintiffs and other TN workers with CL Global in jobs that were drastically different than promised to Plaintiffs, the other TN visa workers, and the U.S. government.

200.   The agreement between Defendants to conduct this scheme also is evidenced by their knowledge of the TN visa requirements, knowledge that foreign workers must have a visa and work authorization, and their review of TN visa

documents with full knowledge that the foreign workers would not perform and were not performing jobs that qualified for the TN visa.

201.   Defendants agreed to make false representations to Plaintiffs and other similarly situated Mexican workers that there were high skilled jobs available at LX Hausys requiring the education and skill that would make them eligible for TN visas and entice them to apply, while knowing that these jobs did not exist and that Plaintiffs and others would be working manual labor production assembly line jobs.

202.   Defendants jointly employed Plaintiffs and other TN visa holders to work at LX Hausys's facility, jointly trained and supervised them during their joint employment, and provided Plaintiffs identification badges or visitor badges to allow them access to the LX Hausys facility.

203.   TESS and CL Global, acting as recruiters for LX Hausys, made fraudulent misrepresentations about non-existent jobs and committed overt acts of fraud by (a) collecting information; (b) causing the mail and wires to be used in furtherance of the false and fraudulent statements to the Plaintiffs, the U.S. government, and others; (c) facilitating consular interviews for the Plaintiffs (d) telling the Plaintiffs what to say in their consular interviews (including preparation of the types of questions they would be asked, and the answers to give) and (e) providing other information to LX Hausys.

204.   As part of Defendants' fraudulent misrepresentations, and with the plan

and intention of using the same to defraud the U.S. government in connection with TN visa applications, Defendants offered the Plaintiffs and others jobs at LX Hausys as outlined in the Support Letters.

205.   All the Defendants knew that TN visas would not and could not be granted for workers to perform the manual labor positions that LX Hausys wanted filled. This is one reason they concocted their fraudulent scheme.

206.   As outlined above, Plaintiff Dominguez made his supervisors at CL Global aware that he was performing an operator job, and not an engineer job. In response, the CL Global representatives did not appear surprised, and told him nothing was going to change.

207.   Knowing that TN visas would be granted only for professional foreign workers for professional-level job positions, all Defendants agreed that TESS, CL Global, and LX Hausys (1) would recruit high skilled Mexican engineers and technicians for LX Hausys who satisfied the TN visa requirements; and (2) would misrepresent the production line labor positions (which did not qualify the men for TN visas) as professional-level engineering and technician job positions (which did qualify for TN visas).

208.   LX Hausys, TESS, and CL Global further agreed that CL Global would provide housing and utilities for the recruited workers.

209. The plan continued with TESS vetting the Plaintiffs and other candidates, obtaining their resumes, proof of technical or bachelor's degrees, and checking their educational background and engineering and/or technician skills.

210. The plan continued with TESS coordinating the interviews with Plaintiffs.

211. The plan continued with TESS conducting interviews and confirming that Plaintiffs and other foreign workers were in fact highly skilled and highly educated, and concealing the nature of the job positions available for Plaintiffs and other foreign workers.

212. The plan continued with LX Hausys and CL Global preparing, and TESS providing, fraudulent written job offers and TN visa Support Letters to the Plaintiffs and other foreign workers that mispresented the job positions, duties, and pay so that the job positions met the requirements for TN visas and so that Plaintiffs and other foreign workers would accept the job positions and apply for TN visas, to their detriment.

213. The plan continued with TESS providing the Plaintiffs and other workers directions on how to prepare for and answer questions during their consular interviews so that they could obtain TN visas.

214. At the time that TESS provided the fraudulent TN visa Support Letters to the Plaintiffs and other foreign workers, offering them an engineer or technician

position, all the Defendants knew that the letters included false descriptions of the positions available for the Plaintiffs and other workers, false descriptions of the pay to the Plaintiffs and other foreign workers, and other false information.

215.   The fraudulent TN visa Support Letters were directed to the United States consulate and were part of these Defendants' scheme to commit visa fraud, mail and wire fraud, and fraud in foreign labor contracting.

### *Participation in the Operation and Management of the Enterprise's Affairs*

216.   LX Hausys directed TESS to post job announcements for positions of employment at the LX Hausys plant which would, by reason of the education, experience, and skill required, qualify the successful applicant to obtain a TN visa.

217.   Defendants developed a strategy and a "strategic alliance" to recruit and house foreign workers who might be qualified for the TN visa, by identifying appropriate websites and other locations in which to post announcements for jobs at LX Hausys that would be seen and responded to by qualified Mexican nationals.

218.   TESS and CL Global then executed that strategy, communicating with the Plaintiffs and other potential targets of the fraud scheme to screen them for employment with LX Hausys, checking their educational background and engineering or technician qualifications, and preparing them for their consular interviews.

219.   TESS and CL Global accepted the directives of LX Hausys and

provided information concerning the positions at LX Hausys to individuals who responded to the announcements they posted.

220.   TESS made false statements and fraudulent misrepresentations to the candidates during their job interviews.

221.   Defendants decided which candidates to hire.

222.   LX Hausys and CL Global prepared Support Letters for candidates to secure TN visas for them to work at its facility.

223.   TESS provided those Support Letters to the Plaintiffs.

224.   CL Global and LX Hausys provided the fraudulent Support Letters to the U.S. Consulate on behalf of their respective companies and the hired candidates.

225.   Upon arriving in the United States, CL Global provided two months of housing at a motel and transportation for Plaintiffs and other TN visa workers working at LX Hausys.

226.   Throughout Plaintiffs' employment, CL Global instructed them on terms and conditions of their employment through LX Hausys, and LX Hausys retained substantial control over the terms and conditions of their employment.

### *Pattern of Racketeering Activity*

227.   The fact that Plaintiff Dominguez viewed the fraudulent job post by TESS for the non-existent engineering job as early as November 2021 shows that the pattern of coordinated conduct by the RICO Enterprise began at least as early as

November 2021, and likely earlier, because when Plaintiff Dominguez started working at LX Hausys there were already at least 50 TN visa workers present.

228.   TN visa workers continue to work in manual labor jobs at LX Hausys through the time of the filing of this Complaint.

229.   Defendants in the RICO Enterprise continue to participate in and profit from this illegal scheme.

230.   Defendants recruited hundreds of foreign workers under the TN visa program through this scheme in which Defendants advertised false job openings, made false job offers, submitted false TN visa Support Letters, induced the foreign workers to come to the U.S. for non-existent jobs, and required the foreign workers to work in manual labor positions for long hours at pay that was lower than promised, that was discriminatory , and that violated the FLSA.

### *Racketeering Activity through Numerous Predicate Acts of Fraud*

231.   As part of a scheme or artifice to defraud, Defendants caused to be transmitted by mail and/or wires the job announcements used to recruit candidates like the Plaintiffs for employment with LX Hausys.

232.   The Defendants used the mail and wires, including telephone and video calls, email, text messages, and WhatsApp messages, in furtherance of the foregoing activities. Therefore, the foregoing activities constitute mail and/or wire fraud, in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 1343, fraud in foreign labor

contracting in violation of 18 U.S.C. § 1351, visa fraud in violation of 18 U.S.C. § 1546, false statements and writings in violation of O.C.G.A. § 16-10-20, and damaged Plaintiffs and similarly situated employees.

233.   The job announcements posted by Defendants contained material misrepresentations upon which the Plaintiffs who viewed them and others relied to their detriment, constituting violations of 18 U.S.C. § 1341 and/or § 1343.

234.   As part of a scheme or artifice to defraud, Defendants caused to be transmitted by mail and/or wires the Offer Letters which offered non-existent jobs at LX Hausys to the Plaintiffs and others.

235.   The job titles and positions in the Offer Letters were material misrepresentations upon which the Plaintiffs and others relied to their detriment, constituting violations of 18 U.S.C. § 1341 and/or § 1343.

236.   As part of a scheme or artifice to defraud, Defendants caused to be transmitted to the Plaintiffs by mail and/or wires Support Letters, addressed to the U.S. government, regarding the jobs to be performed by Plaintiffs and others.

237.   Defendants made material misrepresentations in the statements of fact submitted to the U.S. government, and the U.S. government relied on those statements in issuing TN visas to Plaintiffs and others, constituting violations of 18 U.S.C. § 1341 and/or §1343 and §1546.

238.   As part of a scheme or artifice to defraud, Defendants used materially

false or fraudulent representations or promises regarding employment offered to the Plaintiffs and others knowingly and with the intent to defraud, in violation of 18 U.S.C. § 1351.

239.   As part of a scheme or artifice to defraud, Defendants used false attestations to secure work authorization for the Plaintiffs and others and/or knowingly subscribed as true false statements concerning the jobs to be performed by the Plaintiffs and others, as well as other false statements concerning the terms and conditions of the Plaintiffs' and others' employment, as set forth in Plaintiffs' Statement of Facts, above, which were material facts in an application, affidavit, or other document submitted for use in immigration proceedings to obtain a visa, constituting a violation of 18 U.S.C. § 1546.

240.   Defendants each knowingly and with the intent to defraud recruited, solicited, and hired the Plaintiffs and other foreign workers for purposes of employment by means of false and fraudulent pretenses, representations and promises regarding the employment, in violation of 18 U.S.C. § 1351.

241.   Defendants knowingly and with the intent to defraud recruited, solicited, and hired the Plaintiffs and other foreign workers for purposes of employment by means of false and fraudulent pretenses, representations and promises regarding the employment, in violation of 18 U.S.C. § 1351.

242.   Defendants used false attestations and provided fraudulent TN visa Support Letters to the U.S. government for purposes of committing visa fraud in violation of 18 U.S.C. § 1546. *See*, *e.g.*, *U.S. v. Wu*, 2022 WL 4461376, at *3 (9th Cir. Sept. 26, 2022).

### *Plaintiffs' Pecuniary Injuries Directly and Proximately Caused by the Pattern of Racketeering Activity*

243.   Defendants knowingly and through fraudulent conduct induced the Plaintiffs and other foreign workers to unknowingly pay for and apply for a fraudulent TN visa, to travel to the United States for a job that did not exist, and to accept employment at terms that were less than promised.

244.   Plaintiffs and other TN visa foreign workers suffered pecuniary losses that were directly and proximately caused by the fraudulent job postings for positions with LX Hausys, the application and related information provided to them by Defendants, the Offer Letters provided to them by Defendant, and the Support Letters provided to them and the U.S. Consulate by CL Global and LX Hausys, the resulting TN visas issued to them, including but not limited to:

      a.     Travel costs to and from the U.S. consulate for the mandated TN visa interview;

      b.     U.S. government visa processing fees of $160 per visa;

      c.     Unreimbursed expenses for travel to the U.S. to work for LX Hausys and return travel to Mexico;

      d.    Costs to purchase essential furniture and household goods; and

      e.    Lost wages in the form of the difference between the wages promised and the lower wages actually paid.

245.   These pecuniary losses and others would not have been suffered but for the material misrepresentations made to the Plaintiffs and others as part of the scheme to defraud them and the U.S. government to secure recruit the Plaintiffs and others for jobs that did not exist.

## The RICO Conspiracy

246.   Plaintiffs plead the existence of a RICO Conspiracy as well.

247.   Defendants agreed that TESS would post multiple fraudulent job announcements using wires; that TESS would send multiple fraudulent job offers for non-existent jobs to multiple different candidates from CL Global, TESS, and LX Hausys; that TESS would send fraudulent Support Letters to Plaintiffs and others and the U.S. government; that CL Global and LX Hausys would prepare fraudulent Support Letters to Plaintiffs and others and the U.S. government; and that LX Hausys would supervise, manage, and direct Plaintiffs and others to perform jobs that were not the jobs promised to them in the job announcements and correspondence, all of which constitute multiple predicate acts of mail and/or wire fraud in violation of 18 U.S.C. § 1341 and/or § 1343, labor contracting fraud in violation of 18 U.S.C. § 1351, and misuse of visas in violation of 18 U.S.C. § 1546,

and false statements and writings in violation of O.C.G.A. § 16-10-20.

248.   At the same time Defendants engaged in this pattern of racketeering activity, (a) Defendant LX Hausys knowingly took the affirmative steps of retaining the services of CL Global and TESS to engage in the same scheme to defraud Mexican engineers and the U.S. government for the same common purpose, and (b) TESS and CL Global took affirmative steps, including coordinating communications with Mexican engineers, and providing hotel rooms to Plaintiffs for the first two months of their employment with LX Hausys.

249.   Defendants conspired with each other by adopting the goal of furthering and participating in the objectives of the RICO Enterprise to engage in a fraudulent scheme.

## CLASS ACTION ALLEGATIONS

250.   Plaintiffs bring their federal and Georgia RICO claims and their contract claims on behalf of themselves and a class of persons ("the Recruitment Class") consisting of:

> All individuals who, between March 25, 2018, and the present, (1) were recruited by TESS, (2) were employed at the LX Hausys plant, (3) received wages from CL Global, and (4) were TN visa holders.

251.   The LX Hausys Claimants bring their Section 1981 claims on behalf of a class of persons ("the Discrimination Class") consisting of:

> All individuals who, between March 25, 2020, and the present, (1) were recruited by TESS, (2) were employed at the LX Hausys

plant, (3) received wages from CL Global, and (4) were non-white Hispanic or Latino, non-U.S. citizens, and of Mexican national origin.

252. Excluded from the Classes are the legal representatives, officers, directors, assigns, and successors of Defendants; any individual who at any time during the Class periods has had a controlling interest in any Defendant; and all persons who submit timely and otherwise proper requests for exclusion from the Classes.

### *Numerosity*

253. There are over 100 individuals who are members of each Class and based on the number of individuals with TN visas hired to work at the LX Hausys plant.

254. The members of the Classes are sufficiently numerous that joinder of all members is impractical.

### *Existence and Predominance of Common Questions*

255. Common questions of law and fact exist as to Plaintiffs and members of the Classes and predominate over questions affecting only individual Class members.

256. These common questions include:

    a.    whether Defendants conspired to violate Georgia RICO;

b.      whether Defendants committed a pattern or patterns of racketeering activity causing Plaintiffs and other TN visa holders to suffer pecuniary losses;

c.      The nature and extent of class-wide injury and the measure of damages for those injuries;

d.      Whether Defendants breached contractual promises to Plaintiffs and others to provide employment with job duties requiring engineering and/or technical education, experience, and skill at salaries presented in the Support Letters;

e.      In the alternative to the question of whether Defendants breached their contracts, whether Defendants were unjustly enriched by Plaintiffs' and others' labor;

f.      Whether Defendants unlawfully discriminated against the putative Discrimination Class by paying them less, requiring them to work longer, and/or requiring they work less desirable shifts as compared to U.S. citizens or nationals, non-Mexican nationals, and non-Hispanic workers;

g.      Whether Defendants' actions were undertaken knowingly, willfully, intentionally, and without justification to deprive the putative Discrimination Class members of their rights, and/or

whether Defendants acted intentionally and with malice or reckless indifference to the federally protected rights of the Discrimination Class members;

h.   Whether Defendants provided and obtained Plaintiffs' and others' labor by means of a fraudulent scheme that constituted abuse of legal process; and

i.   The nature and extent of classwide injury and the measure of damages for those injuries.

### *Typicality*

257.   Plaintiffs and members of the Classes have all been subject to the same unlawful practices of Defendants, and their claims arise out of these same practices.

258.   Plaintiffs and members of the Classes have the same rights under applicable laws.

259.   Plaintiffs and members of the Classes were recruited and employed under the same or similar circumstances giving rise to the same claims.

260.   Plaintiffs and members of the Classes suffered similar types of pecuniary damages.

261.   Plaintiffs' claims are typical of the claims of the Recruitment Class because, among other things, they (a) were the victims of fraudulent promises regarding the jobs they would perform at the LX Hausys plant, and (b) performed

jobs that were not what they were promised or at the rate of pay promised.

262.   Plaintiffs' claims are typical of the claims of the Discrimination Class because, among other things, they (a) were TN visa holders; (b) are non-white, Hispanic or Latino, non-U.S. citizens, and of Mexican national origin; and (c) were employees who worked for LX Hausys and CL Global and suffered the same violations as the proposed Discrimination Class members.

263.   Plaintiffs' interests are co-extensive with the interests of the Class members; Plaintiffs have no interest adverse to the members of the Classes.

264.   Plaintiffs and the Classes were offered and did accept the same terms and conditions of employment which Defendants are alleged to have breached.

### *Adequacy*

265.   Plaintiffs will fairly and adequately represent the interests of the Classes. Their interests do not conflict with the interests of the members of the Classes they seek to represent.

266.   Plaintiffs understand that, as Class representatives, they assume a responsibility to the Classes to represent the interests of the Classes fairly and adequately.

267.   Plaintiffs have retained counsel experienced in prosecuting class actions and in employment matters. There is no reason why Plaintiffs and their counsel will not vigorously pursue this matter.

## *Superiority*

268.   A class action is superior to other available means for the fair and efficient adjudication of the claims at issue herein.

269.   The damages suffered by each individual member of the Classes may not be sufficient to justify the burden and expense—particularly in light of the transnational nature of this case—of individual prosecution of the litigation necessitated by Defendants' conduct.

270.   Further, it would be difficult for members of the Classes to obtain individual redress effectively for the wrongs done to them. If individual actions were to be brought by each member of the Classes, the result would be a multiplicity of actions, creating hardships for members of the Classes, the Court, and Defendants.

271.   Individualized litigation also presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the Court system.

272.   By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

273.   This case does not present individualized factual or legal issues which would render a class action difficult.

274.   In the alternative, the Class may be certified because: (a) the

prosecution of separate actions by the individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for Defendants; (b) the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and (c) Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final and injunctive relief with respect to the members of the Classes.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

275.   Plaintiffs and other similarly situated TN visa workers regularly worked at the LX Hausys plant in excess of 40 hours per week ("overtime") for the duration of their employment.

276.   During Plaintiffs' and other similarly situated TN visa holders' employment, CL Global provided them with housing and transportation assistance for the first two months of their employment.

277.   As set forth in the Offer Letters and Support Letters provided to Plaintiffs, housing accommodations and transportation assistance were regarded as part of Plaintiffs' and other similarly situated workers' compensation.

278.   When calculating overtime wages, LX Hausys and CL Global did not include in the regular rate of pay the reasonable cost to Defendants or the fair value of the housing or transportation assistance. 29 C.F.R. § 778.116.

279.   Additionally, as a condition of obtaining their employment with the Defendants, Plaintiffs and other similarly situated TN visa holders were required to incur the cost of their TN visas and of their inbound and outbound travel, which primarily benefitted Defendants, and for which they were not fully reimbursed in Plaintiffs' first or final workweeks, effectively reducing Plaintiffs' wages below their required overtime rates of pay.

280.   Plaintiffs were also not compensated for all overtime hours worked in each pay period.

281.   Therefore, Defendants did not pay Plaintiffs and other similarly situated TN visa holders overtime wages at a rate of one-and-one-half their regular rate of pay, as required by the FLSA. 29 U.S.C. § 207(a).

282.   In violation of the FLSA, Defendants did not pay Plaintiffs and other similarly situated workers overtime at the rate of one-and-one-half times the regular rate of pay promised in Defendants' Offer Letters and which Defendants were required to pay as a condition of the U.S. government's issuance of the TN visas.

283.   The actions and omissions alleged above were willful in that Defendants were aware of their obligations regarding overtime wages, showed

reckless disregard for whether their conduct violated the FLSA, or acted without a reasonable basis to believe their actions were in compliance with the FLSA.

284.   Plaintiffs and other TN visa holders were subject to the same policies and practices of the Defendants.

285.   Common proof applicable to Plaintiffs and the other TN visa holders will show that the Defendants failed to properly pay required overtime and/or minimum wages.

286.    Plaintiffs are currently unaware of the identities of all the employees who would be members of the FLSA opt-in class, but this information is readily ascertainable from the Defendants' records.

287.   Defendants therefore should be required to provide Plaintiffs with a list—including last known addresses, telephone numbers, messaging and social media account information, and email addresses if known—of all individuals who were TN visa holders employed at the LX Hausys plant between March 25, 2021 and the present.

288.   For purposes of the FLSA, Plaintiffs bring this suit on behalf of themselves and the following two classes of similarly situated workers:

> a.   All current and former TN visa employees who worked at LX Hausys within the three-year period before the filing of this Complaint, who elect to opt into this action under the FLSA, 29

60

U.S.C. § 216(b).

### COUNT I
**Georgia Racketeer Influenced And Corrupt Organizations Act,**
**Ga. Code. Ann. § 16-14-1 *et seq.***
**Class Claim**
***All Plaintiffs against All Defendants.***

289.   Plaintiffs reallege and incorporate by reference the foregoing allegations as if set forth fully here.

290.   This Count sets forth Plaintiffs' and Recruitment Class members' claims for damages against all Defendants caused by all Defendants' violations of the Georgia RICO.

291.   Each Plaintiff is an aggrieved person with standing to sue within the meaning of Georgia RICO, O.C.G.A. § 16-14-6(b).

292.   Each Plaintiff is a person who was injured by reason of violations of O.C.G.A. § 16-14-4, and therefore, Plaintiffs have standing to sue pursuant to Georgia RICO, O.C.G.A. § 16-14-6(c).

293.   Defendants, as an association in fact although not a legal entity, are a RICO Enterprise, as defined above, within the meaning of O.C.G.A. § 16-14-3(3).

294.   The association-in-fact enterprise and each Defendant had the common purpose of securing cheap manual labor to work at the LX Hausys plant in violation of the immigration laws, and to profit from such labor.

295.   Defendants each, through a pattern of racketeering activity or proceeds

derived therefrom, acquired or maintained, directly or indirectly, an interest in or control of the RICO Enterprise, real property, and/or personal property of any nature, including money, in violation of O.C.G.A. § 16-14-4(a).

296.   Defendants each associated with the RICO Enterprise, and/or conducted or participated in, directly or indirectly, the RICO Enterprise through a pattern of racketeering activity, in violation of O.C.G.A. § 16-14-4(b)..

297.   Defendants conspired to commit the violations of the Georgia RICO set forth above at ¶¶ 227-242 and at ¶ 247, in violation of O.C.G.A. § 16-14-4(c).

298.   Specifically, the predicate acts of racketeering activity by which the Defendants committed the Georgia RICO violations set forth in the preceding paragraphs, are the following:

a.      Mail fraud in violation of 18 U.S.C. § 1341;

b.      Wire fraud in violation of 18 U.S.C. § 1343;

c.      Fraud in foreign labor contracting in violation of 18 U.S.C. § 1351;

d.      Visa Fraud in violation of 18 U.S.C. § 1546; and

e.      False Statements and Writings in violation of O.C.G.A. § 16-10-20.

299.   Defendants used proceeds derived from the racketeering activity – and/or conspired to do so – to acquire and maintain interest in money.

*Predicate Acts*

Conduct Defined as "Racketeering"

300.   As set forth in the preceding paragraphs, Defendants, through the RICO Enterprise, committed and/or conspired to commit, mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343; fraud in foreign labor contracting, in violation of 18 U.S.C. §§ 1351; and visa fraud in violation of 18 U.S.C. § 1546.

*Pattern of Related Racketeering Acts*

301.   Defendants engaged in the racketeering activity described in this lawsuit repeatedly, and on not less than two occasions, starting during or before November 2021, and continuing through the present.

302.   Defendants relied on and profited from the racketeering acts described in this Complaint to conduct their regular business activities.

303.   Defendants' racketeering acts have had similar purposes: to profit from fraudulent recruitment of Plaintiffs and other foreign workers, and profit from cheap labor in violation of immigration law.

304.   Each of the Defendants' acts yielded similar results and caused similar injuries to Plaintiffs, as outlined below.

305.   As set forth herein, each of the Defendants agreed to commit more than two predicate acts, including, but not limited to:

a. LX Hausys and CL Global directed TESS to—and agreed that TESS would—post jobs offers for employment at LX Hausys that contained fraudulent misrepresentations regarding non-existent jobs, which Plaintiffs and others relied upon;

b. TESS agreed to post job offers for employment at CL Global and LX Hausys that contained fraudulent misrepresentations regarding non-existent jobs, which Plaintiffs and others relied upon;

c. TESS interviewed Plaintiffs and others using wires and made fraudulent misrepresentations to them for the purpose of enticing them to apply for employment at CL Global and LX Hausys for jobs which did not exist and were not eligible for a TN visa;

d. Defendants provided Offer Letters and Support Letters to Plaintiffs and others, and which Defendants knew contained false information about the terms, conditions, and nature of employment;

e. CL Global and LX Hausys prepared the fraudulent Offer Letters and Support Letters and directed TESS to send them to Plaintiffs and others;

f.     Defendants offered employment to Plaintiffs and others on the basis of fraudulent misrepresentations, and sent Plaintiffs and others Offer Letters containing fraudulent misrepresentations regarding non-existent jobs using mails and/or wires on their joint letterhead;

g.     LX Hausys and CL Global agreed that TESS would—and TESS did—use the mail and/or wires to send the Offer Letters containing fraudulent misrepresentations regarding non-existent jobs to the Plaintiffs and other claimants;

h.     Defendants submitted Support Letters falsely and fraudulently certifying the nature of the jobs being offered and the wages that would be paid to Plaintiffs and others at LX Hausys;

i.     LX Hausys provided, and/or agreed to the provision of, the false information contained in the Support Letters for the purpose of defrauding Plaintiffs and the U.S. government and securing cheap labor for the LX Hausys plant after Plaintiffs obtained TN visas in violation of immigration law and began working for Defendants;

j.     CL Global submitted the false and fraudulent Support Letters to the U.S. government for the purpose of defrauding the U.S.

government and inducing it to issue TN visas to Plaintiffs and others for jobs that did not qualify for the TN visa program;

k.  LX Hausys's human resources department had actual knowledge that Plaintiffs and others were permitted to work in the United States only pursuant to TN visas and knowingly hired them for positions that did not qualify for the TN visa program, in violation of federal law; and

l.  LX Hausys and CL Global were joint employers that knowingly hired (and continued to hire) the Plaintiffs and other claimants to work in positions with titles that contradicted those given in the Offer Letters, with duties and salaries that contradicted those identified in the TN visa Support Letters, and which were contrary to the requirements of the TN visa program.

### *Injury and Remedies*

306.  As a direct and proximate result of the Defendants' willful, knowing, and intentional acts in violation of Georgia RICO set forth in this Complaint, Plaintiffs and Recruitment Class members have suffered injuries to their property, including but not limited to visa processing fees, unreimbursed travel expenses, incidental relocation expenses, wage underpayments, lost employment opportunities, and/or other pecuniary losses, as well as emotional suffering.

66

307.  The injuries flowed directly from the Georgia RICO predicate acts which were targeted at Plaintiffs and Recruitment Class members such that Plaintiffs and Recruitment Class members were the intended victims: Plaintiffs and Recruitment Class members were the foreign workers that Defendants intentionally defrauded for purposes of securing cheap labor in violation of immigration law.

308.  Defendants' acts and omissions giving rise to this claim showed willful misconduct, malice, fraud, wantonness, oppression, and entire want of care, giving rise to a presumption of conscious indifference to the consequences.

309.  Plaintiffs and other Recruitment Class members are entitled to damages in an amount to be determined at trial, including but not limited to:

    a.  compensation for their injuries to their property;

    b.  punitive damages;

    c.  trebling of the damages set forth in subparagraph (a) and (b), *supra*; and

    d.  attorneys' and experts' fees and costs associated with this action, as authorized by O.C.G.A. § 16-14-6(c).

## COUNT II
### Violation of 42 U.S.C. § 1981
### Class Claim
### *All Plaintiffs against LX Hausys and CL Global*

310.  Plaintiffs and the Class members reallege and incorporate all preceding paragraphs as if set forth fully herein.

311.  This Count sets forth claims for damages arising out of the

Discrimination Class members' Section 1981 claims against Defendants.

312.   Plaintiffs and the Class members were at all times relevant to this Complaint, parties to contracts, including contracts for the performance of work, in which Plaintiffs and the Class members were compensated by Defendants for work.

313.   Plaintiffs and the Class members performed their contractual obligations.

314.   Plaintiffs and the Class members are Hispanic or Latino and of Hispanic or Latino ancestry.

315.   Plaintiffs and the Class members are citizens of Mexico and not citizens of the United States.

316.   Plaintiffs and the Class members were subjected to disparate treatment discrimination on the basis of their race, non-white Hispanic or Latino, and based on their alienage by, among other things, being paid less for performing the same work as white and American employees of Defendants, being forced to work overtime and more hours per week than those non-Hispanic (white and black) and non-U.S. citizen employees, as well as being mandated to work less desirable night shifts.

317.   The above-pled discriminatory conduct toward Plaintiffs and the Class members constitutes unlawful race discrimination against them in violation of 42 U.S.C. § 1981.

318.   Defendants undertook their conduct intentionally and maliciously with

respect to Plaintiffs and the Discrimination Class members and their federally protected rights, or additionally, and in the alternative, undertook their conduct recklessly with respect to the Plaintiffs and the Discrimination Class members and their federally protected rights, entitling them to recover punitive damages against Defendants.

319.   As a direct and proximate result of Defendants' unlawful actions, Plaintiffs and the Class members have suffered lost compensation and other benefits of employment, pain and suffering in the form of emotional distress, inconvenience, humiliation, and other indignities.

320.   Plaintiffs and the Class members are entitled to damages, including back pay and lost benefits, promotion or a higher rate of pay, compensatory damages, punitive damages, attorney's fees and costs of litigation pursuant to 42 U.S.C. § 1988, and all other relief recoverable under 42 U.S.C. § 1981.

## COUNT III
### Fair Labor Standards Act Violations
### Collective Action Claim
### *All Plaintiffs against Defendants LX Hausys and CL Global*

321.   Plaintiffs reallege and incorporate by reference the foregoing allegations as if set forth fully here.

322.   Plaintiffs consent in writing to become party Plaintiffs in this action for claims under the FLSA. (Exhibits 17 & 18).

323.   This count sets forth a claim by Plaintiffs, and by all similarly situated

workers who opt into this action pursuant to 29 U.S.C. § 216(b), for damages resulting from Defendants' violations of the FLSA.

324.   Plaintiffs and other TN visa holders regularly worked more than 40 hours in a single work week.

325.   Defendants' failure to pay one-and-one-half times Plaintiffs' regular rate of pay for hours above 40 in a work week violated the overtime provisions of the FLSA, 29 U.S.C. § 207(a), and its implementing regulations.

326.   Additionally, Defendants' failure to pay Plaintiffs and other TN visa workers in some work weeks at least the minimum wage of $7.25 per hour, violated the minimum wage provisions of the FLSA, 29 U.S.C. § 206(a), and its implementing regulations.

327.   Defendants' violations of the FLSA were willful in that they were aware of their obligations regarding overtime and/or minimum wages, showed reckless disregard for whether their conduct violated the FLSA, or acted without a reasonable basis to believe their actions were in compliance with the FLSA.

328.   Plaintiffs and the other similarly situated TN visa holders are entitled to their unpaid wages, plus an additional equal amount in liquidated damages, as a consequence of Defendant's unlawful actions and omissions, in accordance with 29 U.S.C. § 216(b).

329.   Plaintiffs and the other TN visa holders are also entitled to costs of

Court, pursuant to 29 U.S.C. § 216(b).

330.   Plaintiff and the other TN visa holders also seek, and are entitled to, the attorneys' fees incurred by their counsel, pursuant to 29 U.S.C. § 216(b).

## COUNT IV
### Breach of Contract under Georgia State Law
### Class Claim
### *All Plaintiffs Against Defendant LX Hausys and CL Global*

331.   Plaintiffs reallege and incorporate by reference the foregoing allegations as if set forth fully here.

332.   This count sets forth a claim by Plaintiffs and other Recruitment Class members for damages resulting from breach of contract by Defendants CL Global and LX Hausys.

333.   The parties entered into a written contract.

334.   Defendant LX Hausys and CL Global made written offers of employment to Plaintiffs and the Recruitment Class members in the Offer Letters and in the Support Letters which contained material terms of their employment, including that these jobs would be highly skilled engineer positions paying a certain rate of pay which would be eligible for the TN visa.

335.   Plaintiffs and the Recruitment Class members accepted the material terms of employment offered by Defendants in the Offer Letters and in the Support Letters and forbore other opportunities for employment and undertook certain expenses in exchange for employment on the terms offered.

71

336.   Defendant breached the contracts by failing to provide the employment to Plaintiffs and the Recruitment Class members as offered, instead providing manual labor jobs on the LX Hausys production line which were not eligible for TN visas, and providing discriminatory wages that were lower than the wage promised in the Support Letters.

337.   As a result, Plaintiffs and other Recruitment Class members incurred incidental and consequential damages which they are entitled to recover at law, including but not limited to visa processing fees, unreimbursed travel expenses, relocation expenses, wage underpayments, and lost employment opportunities, and nominal damages.

338.   Plaintiffs and other Recruitment Class members also are entitled to recover nominal damages for Defendants' breach of these contracts.

**<u>COUNT V</u>**
**Unjust Enrichment under Georgia State Law**
**Class Claim**
***All Plaintiffs Against Defendant LX Hausys and CL Global***
**(Pleading in the Alternative to Count IV, Breach of Contract)**

339.   Plaintiffs reallege and incorporate by reference the foregoing allegations as if set forth fully here.

340.   This count sets forth a claim by Plaintiffs and other Recruitment Class members for damages resulting from Defendants CL Global's and LX Hausys's unjust enrichment.

341.   Plaintiffs and other Recruitment Class members bring this unjust enrichment claim in the alternative to Plaintiffs' breach of contract claim (Count IV).

342.   Plaintiffs and other Recruitment Class members performed valuable services on behalf of and at the request of Defendants CL Global and LX Hausys.

343.   Defendants CL Global and LX Hausys induced or encouraged the Plaintiffs and other Recruitment Class members to provide these services.

344.   Defendants CL Global and LX Hausys accepted the fruits of Plaintiffs' and other Recruitment Class members' services.

345.   Defendants CL Global and LX Hausys failed to pay Plaintiffs and other Recruitment Class members the full amount of wages owed for their work.

346.   Defendants CL Global and LX Hausys retained money or benefits which in justice and equity rightfully belong to Plaintiffs and other Recruitment Class members.

347.   It would be unjust for Defendant CL Global and LX Hausys to retain the benefit of Plaintiffs' and other Recruitment Class members' labor without paying their full wages.

348.   Defendants CL Global and LX Hausys's retention of the benefit of Plaintiffs' and other Recruitment Class members' labor without payment of full compensation constitutes unjust enrichment under Georgia law.

349.   Plaintiffs and other Recruitment Class members are entitled to recover

from Defendants CL Global and LX Hausys all unpaid wages and punitive damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the Class, demand a trial by jury on all triable issues and seeks judgment as follows:

a.   assuming jurisdiction over this action;

b.   certifying this case as a class action under Fed. R. Civ. P. 23, naming Plaintiffs as Class Representatives, and appointing Plaintiffs' attorneys as counsel for the Classes;

c.   declaring this action to be maintainable as a FLSA collective action pursuant to 29 U.S.C. § 216, allowing Plaintiffs to provide notice of this action to potential opt-in plaintiffs, and allowing those eligible TN visa holders who choose to do so to opt into this action;

d.   declaring that Defendants violated Georgia RICO;

e.   declaring Defendants LX Hausys and CL Global violated Section 1981;

f.   declaring Defendants LX Hausys and CL Global violated the FLSA;

g.   declaring Defendants LX Hausys and CL Global breached contracts of employment with Plaintiffs and applicable Class members;

h.   in the alternative to the declaring Defendants LX Hausys and CL Global breached contracts of employment, declaring Defendants LX Hausys

and CL Global unjustly enriched themselves through Plaintiffs' and other applicable Class members;

i.     permanently enjoining Defendants from further violations of Georgia RICO;

j.     permanently enjoining Defendants from further violations of Section 1981 and the FLSA;

k.     granting judgment to Plaintiffs and other Recruitment Class members, and against all Defendants, on Plaintiffs' and other Recruitment Class members' Georgia RICO claims and awarding them the trebled amount of their pecuniary losses and punitive damages;

l.     granting judgment to Plaintiffs and other Recruitment Class members, and against all Defendants, on Plaintiffs' and other Recruitment Class members' Georgia contract claims and awarding them all compensatory, consequential, incidental and/or nominal damages;

m.     in the alternative to granting judgment on Plaintiffs' and other Recruitment Class members' contract claims, granting judgment on Plaintiffs' and other Recruitment Class members' unjust enrichment claims and awarding them all unpaid wages and punitive damages;

n.   granting judgment to Plaintiffs and other Discrimination Class members, and against Defendants LX Hausys and CL Global, pursuant to Section 1981 and awarding compensatory and punitive damages;

o.   granting judgment to Plaintiffs and other similarly situated TN visa holders who opt in pursuant to 29 U.S.C. § 216(b) on their FLSA claims, and against Defendants, and awarding each of them their unpaid wages plus an equal amount in liquidated damages;

p.   Awarding Plaintiffs and other Class members prejudgment and post-judgment interest as allowed by law;

q.   Awarding Plaintiffs and other Class members their costs and reasonable attorneys' fees; and

r.   Granting such further relief as the Court finds just.

## **JURY DEMAND**

Plaintiffs, individually and on behalf of the Class, hereby demand a trial by jury as to all issues so triable.

Respectfully submitted this day: March 25, 2024.

*/s/ Rachel Berlin Benjamin*
Rachel Berlin Benjamin
Georgia Bar No. 707419
Brian J. Sutherland
Georgia Bar No. 105408
BEAL SUTHERLAND BERLIN & BROWN LLC
945 East Paces Ferry Rd. NE, Suite 2000
Atlanta, GA 30326

(404) 476-5305

Daniel Werner
Georgia Bar No. 422070
dwerner@radfordscott.com
James Radford
Georgia Bar No. 108007
jradford@radfordscott.com
RADFORD SCOTT, LLP
315 W. Ponce de Leon Ave., Suite 1080
Decatur, Georgia 30030
(678) 271-0300

Christopher B. Hall
Georgia Bar No. 318380
Ricardo Gilb
Georgia Bar No. 564635
HALL & LAMPROS, LLP
300 Galleria Parkway, Suite 300
Atlanta, GA 30339
Telephone: (404) 876-8100
Facsimile: (404) 876-3477
chall@hallandlampros.com

*Attorneys for Plaintiffs*